# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg School District,       :
           Petitioner       :
      :    No. 605 M.D. 2024
      v.       :
      :    Argued: September 9, 2025
Public School Employees'       :
Retirement System and Premier       :
Arts and Science Charter School,       :
           Respondents       :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                          **FILED: October 7, 2025**

Harrisburg School District (School District) brought this Petition for Review in the Nature of Declaratory Judgment (Petition) in this Court's original jurisdiction against Public School Employees' Retirement System (PSERS) and Premier Arts and Science Charter School (Premier) (collectively, Respondents). Therein, the School District seeks a declaration from this Court that: (1) the School District, and not PSERS, is entitled to the entirety of the funds at issue pursuant to Section 1729-A(i) of the Charter School Law (CSL);[1] and (2) Section 8327.1 of the Public School Employees' Retirement Code (Retirement Code)[2] does not apply to

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. § 17-1729-A(i).

[2] 24 Pa.C.S. § 8327.1.

the closure of charter schools; or, alternatively, (3) Section 8327.1 of the Retirement Code is unconstitutional on its face or in its application; (4) PSERS is in violation of Section 8327.1 of the Retirement Code; and (5) PSERS has no valid claim to the funds. Further, the School District requests an order requiring Premier to "safeguard" the funds for the School District, awarding injunctive relief as necessary, and granting any other relief deemed appropriate, including attorneys' fees and costs. Currently before this Court are the preliminary objections filed by PSERS. For the reasons that follow, we overrule PSERS' preliminary objections.

## I. BACKGROUND[3]

Premier is a non-profit corporation that formerly operated as a charter school[4] authorized by the School District until it ceased operations following nonrenewal proceedings at the conclusion of the 2023-2024 school year. A charter may be revoked or not renewed for a variety of reasons. *See* 24 P.S. § 17-1729-A(a). The revocation, termination, or nonrenewal of a charter results in the dissolution of the charter school. 24 P.S. § 17-1729-A(i). Premier is presently in the process of winding up its affairs and distributing its remaining assets. Upon dissolution, the charter school's "liabilities and obligations" are settled, and any surplus assets are

---

[3] Unless otherwise stated, we derive this background from those facts alleged in the Petition. *See* Pet. 12/23/24. Any citations to exhibits are specifically noted. *See Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it).

[4] A charter school is defined as "an independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend. A charter school must be organized as a public, nonprofit corporation." Section 1703-A of the CSL, 24 P.S. § 17-1703-A. Charter schools are governed by the Charter School Law, 24 P.S. §§ 17-1701-A—17-1751-A, which was added to the Public School Code of 1949. *See* S.B. 123, Act 1997-22, Reg. Sess.

distributed proportionally to the school entities[5] that had students enrolled in the charter school in the year immediately preceding its closure. *Id.* Importantly, "[i]n no event shall such school entities or the Commonwealth be liable for any outstanding liabilities or obligations of the charter school." *Id.*

PSERS is the statutorily established retirement system for public school employees under the Retirement Code, 24 Pa.C.S. §§ 8501-8547. This case presents the Court with the question of whether, and to what extent, PSERS may impose or enforce withdrawal liabilities against a charter school that has ceased operations and is undergoing dissolution under Section 1729-A(i) of the CSL.

The present dispute arises from a withdrawal liability notice sent to Premier from PSERS. *See* Pet., Exs. A, B, C. This notice, dated October 18, 2024 (October letter), addressed to Premier, and on which the School District was copied, enclosed a prior letter dated September 17, 2024 (September letter). *See* Pet., Ex. A. In the September letter, PSERS advised Premier that it had been deemed a "nonparticipating employer" pursuant to Section 8327.1 of the Retirement Code, identified June 30, 2024, as the "nonparticipation date," and calculated Premier's "withdrawal liability" in the amount of $638,000. *Id.* The letter further stated that a liability worksheet and the applicable statutory provisions were enclosed, and that payment was required in full within 30 days. *Id.* The October letter reiterated this demand, directing that payment be made to PSERS within 30 days. *See id.* Both letters were addressed to Premier, with the School District copied, and each advised that any questions could be directed to PSERS' withdrawal liabilities resource account. *See id.*

---

[5] A "school entity" is defined in the Retirement Code as "[a] school district of any class, intermediate unit or an area vocational-technical school, as provided for under . . . the Public School Code of 1949." 24 Pa.C.S. § 8102.

3

On November 6, 2024, the School District responded (November letter), demanding that PSERS "cease and desist its attempts to seek and collect any withdrawal liability from Premier" on the ground that such funds belong to the School District. *See* Pet., Ex. B. The November letter further asserted that the Administrative Agency Law[6] did not apply because the Public School Employees' Retirement Board (Retirement Board) had not issued an adjudication or otherwise provided notice or an opportunity to be heard. *See id.* Nevertheless, out of caution, the School District requested notice, information regarding the withdrawal liability, and a hearing. *See id.*

On November 18, 2024, PSERS' Office of Chief Counsel replied, maintaining that collection efforts could not be halted under the law and that the September letter constituted an appealable notice. *See* Pet., Ex. C.

Against this backdrop, the School District filed the instant Petition, raising six counts for our consideration under the Declaratory Judgments Act (DJA).[7] *See generally* Pet., 12/23/24. In Count I, the School District alleges that Section 8327.1 of the Retirement Code does not apply to charter schools after closure or nonrenewal under the CSL, as such events do not render a charter school a "nonparticipating employer" within the meaning of the statute.[8] *See id.* at 17-21.

---

[6] 2 Pa.C.S. §§ 101-754.

[7] *See* Declaratory Judgments Act, 42 Pa.C.S. § 7531-7541.

[8] In relevant part, Section 8327.1 of the Retirement Code provides:

(a) General rule. A nonparticipating employer is liable to the system for withdrawal liability in the amount determined under subsection (c). A nonparticipating employer is an employer that is determined by the board to have ceased:
(1) covered operations under the system; or
(2) to have an obligation to contribute under the system for all or any of the employer's school employees but continues covered operations.

4

Count I further asserts that Section 8327.1 cannot be applied to Section 1729-A(i) of the CSL. *See id.* In Count II, the School District asserts that Section 8327.1 of the Retirement Code constitutes an unconstitutional delegation of legislative authority to the Retirement Board in violation of article II, section 1 of the Pennsylvania Constitution, because it grants the Retirement Board "unlimited discretion and power to declare 'non-participating employers' and assess 'withdrawal liability' without any standards, rules or procedures, or restraints." *See id.* at 24.

Per Count III, PSERS' implementation of Section 8327.1 of the Retirement Code violates the equal protection clause of the Pennsylvania Constitution,[9] insofar as other PSERS-participating charter schools that have closed after enactment of the Section were not subjected to withdrawal liability. *See id.* at 29-32. Count IV similarly contends that PSERS' implementation of Section 8327.1 of the Retirement Code violated due process under the Pennsylvania Constitution,[10] as the School District was denied adequate notice, an opportunity to be heard, and access to an administrative remedy. *See id.* at 32-35.

---

(b) Determination. An employer shall, within the time prescribed by the board in a written request, furnish such information as the board deems necessary to administer this section and to determine whether an employer is a nonparticipating employer. If the board determines that an employer is a nonparticipating employer, the board shall:
　　(1) determine the nonparticipation date;
　　(2) determine the amount of the employer's withdrawal liability;
　　(3) notify the employer of the amount of the withdrawal liability; and
　　(4) collect the amount of the withdrawal liability.
. . . .

24 Pa.C.S. § 8327.1.
　[9] Pa. Const. art. I, § 26.
　[10] Pa. Const. art. I, § 1.

In Count V, the School District asserts that PSERS acted *ultra vires* by attempting to impose withdrawal liability absent any official action by the Retirement Board declaring Premier to be a nonparticipating employer. *See id.* at 35-36. Finally, Count VI alleges that the School District's claims are not subject to an administrative procedure or remedy; but alternatively, even if they were, the School District asserts it exhausted any such remedies, which in any event would have been inadequate to resolve the claims presented and the relief sought, particularly given PSERS' failure to offer an appropriate procedure. *See id.* at 36-38.

On these grounds, the School District contends that, as the school district of residence for the majority of Premier's students during its final year of operation, it is entitled to nearly all of Premier's remaining assets, including the disputed funds, and seeks a declaration from this Court to that effect. *See id.* at 12, 38-39. Additionally, the School District requests injunctive relief directing Premier to "safeguard" the funds, as well as such further relief as this Court deems necessary, including attorneys' fees and costs.

On January 17, 2025, PSERS filed two preliminary objections.[11] *See* Prelim. Objs., 1/17/25. First, PSERS asserted that the School District failed to exhaust its administrative remedies by neglecting to appeal the September letter, which had notified Premier, and by copy, the School District, that Premier had been deemed a nonparticipating employer and was liable for withdrawal liability. *See* Prelim. Objs., at 8-13. Second, PSERS demurred, asserting that the School District had no cognizable claim because PSERS, as a matter of law, is entitled to receive the funds before any distribution to the School District. *See id.* at 13-15. In PSERS'

_____

[11] Premier did not join in these preliminary objections but instead filed an answer to the Petition (Answer). *See* Answer to Pet., 1/17/25.

6

view, Section 1729-(A)(i) of the CSL requires that a charter school's liabilities be satisfied—including withdrawal liability owed to PSERS under Section 8327.1 of the Retirement Code—before the distribution of remaining assets to the School District. *Id.*

On January 31, 2025, the School District filed a response in opposition to the preliminary objections, reaffirming the averments in its Petition. *See* Answer to Prelim. Objs., 1/31/25. Following briefing and oral argument, the preliminary objections are ripe for review.

## II. DISCUSSION[12]

At the outset, we note that the School District commenced this action by invoking our original jurisdiction pursuant to the DJA. Under the DJA, courts "have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. The statute's purpose is to clarify and "to finally settle and make certain the rights or legal status of parties." *RT Partners v. Allegheny Cnty. Off. of Prop. Assessment*, 307 A.3d 801, 805 (Pa. Cmwlth. 2023) (quoting *Eggleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 150 A.3d 1024, 1029-30 (Pa. Cmwlth. 2016)). Unlike injunctive relief, a declaratory judgment neither commands action nor prohibits conduct; rather, it provides a

---

[12] When reviewing preliminary objections to petitions for review in our original jurisdiction, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts." *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019) (citations omitted). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations." *See id.* "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.3d 413, 416 (Pa. Cmwlth. 2006).

7

definitive judicial pronouncement of the parties' rights and obligations, standing on its own without any executory process. *See RT Partners*, 307 A.3d at 805.

Nevertheless, declaratory relief is not without limits. A court may not issue a declaratory judgment "in anticipation of events which may never occur," nor may it be used to decide moot or abstract questions or render advisory opinions. *Gulnac by Gulnac v. S. Butler Sch. Dist.*, 587 A.2d 699, 701 (Pa. 1991). Whether jurisdiction should be exercised in a declaratory judgment action lies within the court's sound discretion. *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019).

## A. Failure to Exhaust Administrative Remedies

First, PSERS contends that the School District failed to exhaust available administrative remedies by declining to appeal PSERS' September letter. *See* Prelim. Obj. at 8-13; Resp't's Br. at 8-12. According to PSERS, the School District failed to appeal the September letter, which set forth the withdrawal liability allegedly owed, thereby rendering that determination final. *See* Resp't's Br. at 10-11. On this basis, PSERS contends that the School District cannot now challenge the liability determination, as it would be outside the period to file a timely appeal under the procedures outlined in the September letter, as well as the General Rules of Administrative Practice and Procedure (GRAPP).[13] *See id.* at 11-12. Furthermore, PSERS contends that if the School District is challenging an interpretation of the Retirement Code, the Retirement Board has exclusive and primary jurisdiction to construe that statute, citing 2 Pa.C.S. § 702, 24 Pa.C.S. §§ 8501(a), 8502, 8521(a), and 42 Pa.C.S. § 763(a). *See* Resp't's Reply Br. at 9. Moreover, even where interpretation of the Retirement Code "may be influenced by other laws," the Retirement Board's interpretation authority prevails. *See* Resp't's

---

[13] 1 Pa. Code §§ 31.1-35.251.

8

Reply Br. at 7 (citing *Blackhawk Sch. Dist. v. Pub. Sch. Emps.' Ret. Bd.* (Pa. Cmwlth., No. 388 C.D. 2021, filed Nov. 19, 2021). As a result, PSERS concludes, the School District was required to pursue its challenge before the Retirement Board in the first instance, where it could have resolved the issue. *See id.* at 7-10. By instead seeking a declaratory judgment in this Court, PSERS argues, the School District has improperly attempted to circumvent the statutorily prescribed process for challenging an agency's determination or interpretation of its own statute. *See id.* at 9-12.

In response, the School District argues that exhaustion is futile because no administrative process or remedy exists through which it could seek relief. *See* Pet'r's Br. at 14-26. Alternatively, even if such a process were available, it would be inadequate to resolve the underlying dispute. *See id.* Specifically, the School District maintains that it is not contesting the calculation of withdrawal liability, or any agency adjudication, but rather challenging the very applicability and constitutionality of Section 8327.1 of the Retirement Code, as well as the extent it can be applied to a closed charter school under the CSL, absent clear legislative authority to do so. *See id.* at 15. Relief of this kind, the School District asserts, requires a declaratory judgment that can only be granted by this Court and is beyond the Retirement Board's purview. *See id.* at 16-26 (citing *Ohio Cas. Grp. of Ins. Cos. v. Argonaut Ins. Co.*, 525 A.2d 1195 (Pa. 1987) ("Ohio Casualty Group"), among others).

It is well established that, before seeking judicial review, litigants must ordinarily exhaust all adequate and available administrative remedies. *See Glenn Hawbaker, Inc. v. Dep't of Transp.*, 304 A.3d 1067, 1081 (Pa. 2023); 1 Pa.C.S. § 1504 (requiring pursuit of statutory remedies over common law). "Under the

9

exhaustion requirement, a party must pursue the administrative remedies [it] has against an agency before challenging [the agency's] action in court." *Del. Valley Convalescent Ctr. v. Beal*, 412 A.2d 514, 515 (Pa. 1980) (cleaned up). Additionally, where an administrative agency has exclusive jurisdiction, this Court is precluded from granting declaratory relief. *See* 42 Pa.C.S. § 7541(c)(2) (providing that declaratory relief is not available to any proceeding "within the exclusive jurisdiction of a tribunal other than a court").

However, the doctrine of exhaustion of administrative remedies "is neither inflexible nor absolute." *Feingold v. Bell of Pa.*, 383 A.2d 791, 793 (Pa. 1977). Exhaustion "is not intended to set up a procedural obstacle to recovery." *Ohio Cas. Grp.*, 525 A.2d at 1198. Pursuing an administrative remedy first applies only where the available administrative remedy is both adequate to address the alleged injury and capable of affording the requested relief. *See Unified Sportsmen of Pa. v. Pa. Game Comm'n (PGC)*, 950 A.2d 1120, 1135 (Pa. Cmwlth. 2008). Without a concrete remedial process, "[n]ebulous claims of informal procedures or implied administrative powers are unavailing," as a litigant must have access to "a forum available in which [it] can participate. *Ohio Cas. Grp.*, 525 A.2d at 1198. In fact, in *Unified Sportsmen*, this Court declined to sustain a preliminary objection on exhaustion grounds where the agency had failed to identify a specific remedy that the petitioners could have pursued. *See Unified Sportsmen*, 950 A.2d at 1135; *see also Ohio Cas. Grp.*, 525 A.2d 1195 (our Supreme Court affirmed this Court's decision that declined to require an insurer to first exhaust the administrative remedies at 1 Pa. Code Part 35, before bringing an action into our original jurisdiction); *Com. ex rel. Nicholas v. Pa. Lab. Rels. Bd.*, 681 A.2d 157, 158 (Pa. 1996) (our Supreme Court reversed this Court's decision sustaining the agency's

exhaustion doctrine preliminary objection because the petitioner raised both "a substantial constitutional question and established the inadequacy of the administrative remedy," and the agency's "fact-finding expertise" was unnecessary to resolve the constitutional issue). "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Ohio Cas. Grp.*, 525 A.2d at 1197.

Even still, "the failure to follow the better practice does not mean the litigant is precluded from the only enforceable means by which he or she can obtain relief." *Ohio Cas. Grp.*, 525 A.2d at 1198. "Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.'" *Elkin v. Bell Tel. Co. of Pa.*, 420 A.2d 371, 377 (Pa. 1980). In *Elkin*, our Supreme Court provided further guidance:

> [W]here the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one of which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Id.* (emphasis added).

Here, the subject matter is not "peculiarly within the" expertise of PSERS "but is one which the courts . . . are equally well-suited to determine." *See id.* The underlying question in this case is whether the withdrawal liability under

Section 8327.1 of the Retirement Code constitutes a liability or obligation under Section 1729-A(i) of the CSL, a question of interplay between two statutes. The School District is not challenging the Retirement Board's authority to interpret its own statute and definitions, but rather, is challenging a provision of the Retirement Code's applicability to a provision of the CSL. This interplay between the two provisions falls outside administrative review and squarely within the DJA. *See* 42 Pa.C.S. § 7532; *RT Partners*, 307 A.3d at 805.

Further, PSERS' reliance on this Court's unreported decision in *Blackhawk* is misplaced. In that case, we vacated the Retirement Board's order and remanded for further proceedings, concluding that the Retirement Board had the authority to determine whether the employee was a "school employee" under the Retirement Code, even though this determination necessarily involved interpreting the School Code. *See Blackhawk Sch. Dist.*, slip op. at 6-10. PSERS compares *Blackhawk* to this case, where an interpretation of "nonparticipating employer" to include closed charter schools and whether the withdrawal liability functions as a "liability or obligation" under the CSL must first be resolved by the Retirement Board, with only appellate review available. *See* Resp't's Br. at 6-8. However, unlike *Blackhawk*, this case was not already in the midst of the administrative review process, and the question here is whether the withdrawal liability created by Section 8327.1 of the Retirement Code can be understood as a "liability or obligation" for charter schools undergoing dissolution to be paid before the money flows to the school districts under Section 1729-A(i) of the CSL. At this juncture, it is not clear that the Retirement Board is the proper tribunal to resolve that question in the first instance. Rather, determining whether and how these two Sections work together is less a matter of PSERS' specialized expertise in interpreting its own Code and more

12

a question of statutory construction, which is squarely within the province of the courts.

Even if we consider that it might have been better for the School District to first try to resolve its claims with PSERS, that does not mean it was required to do so. It is unclear whether the administrative procedures could have provided the relief the School District seeks. PSERS argues that the School District did not exhaust its administrative remedies by failing to appeal the September letter, referring us to the GRAPP, 1 Pa. Code § 35.20, as the administrative remedy the School District was supposed to follow. *See* Resp't's Br. 8-11. However, the September letter, which PSERS describes as its "final decision," was sent to Premier, not the School District. *See* Pet., Ex. A. There is no indication, either by statute or case law, that the School District must appeal the notice itself or "stand in the shoes" of Premier in this case. In fact, Section 1729-A(i) of the CSL explicitly states that school districts are not responsible for "any outstanding liabilities or obligations of the charter schools." 24 P.S. § 17-1729-A(i).

PSERS also relies on its authority to make decisions under the Retirement Code. *See* Resp't's Br. at 9. However, while this exclusive jurisdiction is firmly rooted in legislation passed by the General Assembly and would generally preclude declaratory relief, *see* 42 Pa.C.S. 7541(c)(2), PSERS essentially posits that its authority should extend to regulations adopted by PSERS lacking any clear statutory support. As explained earlier, the issue here is not an internal matter of Retirement Code administration for the Retirement Board to decide, but whether a part of the Retirement Code can be applied to the CSL. In our view, this disagreement involves statutory interpretation that should be resolved by the courts in the first instance; it is not a matter within the Retirement Board's exclusive

13

authority. *Cf. Germantown Cab Co. v. Phila. Parking Auth.* (Pa. Cmwlth., No. 586 M.D. 2014, filed Dec. 14, 2015), 2015 WL 8605838 (concluding that the Parking Authority Law[14] created a comprehensive and exclusive procedure for challenging assessments and vested exclusive authority in an administrative tribunal, thus precluding declaratory relief).[15]  Therefore, the doctrine of exhaustion does not prevent judicial review in this case.

Accordingly, we overrule PSERS' preliminary objection asserting failure to exhaust administrative remedies, as it cannot be said with certainty that the School District is precluded from obtaining relief. *See Pa. State Lodge, Fraternal Ord. of Police*, 909 A.3d at 416.

### B. Failure to State a Cognizable Claim

In its second preliminary objection, PSERS demurs, asserting that the School District has no cognizable claim because, as a matter of law, PSERS is entitled to receive the disputed funds first. *See* Prelim. Obj. at 13-15; Resp't's Br. at 12-13.  In support, PSERS relies on Section 8327.1 of the Retirement Code, which imposes withdrawal liability on "nonparticipating employers" who have ceased operations with PSERS, which PSERS contends includes a closed charter school, and Section 1729-A(i) of the CSL, which requires that "*liabilities* and obligations" be settled before a charter school's assets are distributed. *See* Resp't's Br. at 12-13; 24 P.S. § 17-1729-A(i) (emphasis added).  Respondents contend that, because PSERS' entitlement to the funds is clear under the law, there can be no "competing claims," and, therefore, the demurrer should be sustained, and the Petition dismissed. *See id.*

---

[14] 53 Pa.C.S. §§ 5701-5745.

[15] We can cite as persuasive unpublished decisions of this Court filed after January 15, 2008. *See* 210 Pa. Code § 69.414(a).

14

In response, the School District argues that it has pleaded sufficient facts to support its claims that Section 8327.1 of the Retirement Code does not apply to a closed charter school, is unconstitutional, and that PSERS' actions are contrary to law. *See* Pet'r's Br. at 26-27. The School District highlights that it is "not asserting a legal claim <u>under</u> Section 8327.1 [of the Retirement Code]," but "is seeking a declaration under the [DJA] as to its legal status, application and enforcement." *See* Pet'r's Br. at 27 (emphasis in original). The School District critiques PSERS for presuming its entitlement to the funds as a matter of law without addressing the sufficiency of all the School District's claims, noting that entitlement to withdrawal liability is itself the core issue in dispute. *See id.* at 27-30. The School District maintains that the Petition raises substantial questions concerning the scope, applicability, and constitutionality of Section 8327.1 of the Retirement Code, causing enough doubt that the preliminary objections should be overruled. *See id.* at 29-31.

A "demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law[.]" *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (cleaned up). We sustain a demurrer only when the law undoubtedly precludes recovery; if doubt exists, we should overrule the demurrer. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005). "When ruling on a demurrer, a court must confine its analysis to the [petition for review]." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). "Thus, the court may determine only whether, on the basis of the [petitioner's] allegations, he or she possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Phila.*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021).

As previously noted, the DJA is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." 42 Pa.C.S. § 7541(a). In accordance with that purpose, the DJA "is to be liberally construed and administered." *Id.* Pursuant to the DJA, "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute[] . . . may have determined any question of construction or validity arising under the . . . statute[] . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 7533.

Here, there is a present and substantial controversy as to whether Section 8327.1 of the Retirement Code applies to a closed charter school's "liabilities and obligations" under the CSL and whether PSERS' interpretation of that provision (*i.e.*, its claim to withdrawal liability) is consistent with constitutional and statutory limits. A declaration from this Court, either on statutory construction grounds asserted in Count I of the Petition, or on constitutional grounds asserted in Counts II, III, and IV of the Petition, would resolve that dispute and terminate the uncertainty surrounding entitlement to the disputed funds. Such relief cannot be obtained through any administrative remedy, and thus, this controversy falls squarely within the scope of the DJA. *See* 42 Pa.C.S. § 7541(a).

Moreover, we observe that PSERS' demurrer fails to attack the sufficiency of the School District's claims in relation to the DJA. *See generally* Prelim. Objs.; Resp't's Br.; Resp't's Reply Br. Instead, it presumes the validity of PSERS' interpretation of Section 8327.1 as applied to Section 1729-A(i) of the CSL and presents a legal defense, not a true demurrer. *See generally* Prelim. Objs.; Resp't's Br.; Resp't's Reply Br. PSERS suggests that the School District's "argument, in large part, centers on [its] reliance on [its] earlier incorrect arguments

16

regarding the propriety of [its] pursuit of a declaratory judgment action." *See* Resp't's Reply Br. at 21. However, the only reasoning PSERS offers in response to these "incorrect arguments" is that the withdrawal liability determination conveyed in the September letter constitutes a final determination, and so "the only issue remaining is whether the 'liability' that Premier owes to PSERS must be paid, as a matter of statute, prior to Premier's remaining assets getting distributed to [the] School District." *See id.* But, at the preliminary objection stage, the Court must assume the truth of the School District's allegations, resolve all doubts in favor of the School District, and determine whether those allegations, if proven, support a cognizable cause of action. *See Cnty. of Berks*, 204 A.3d at 539 n.7; *Pa. State Lodge, Fraternal Ord. of Police*, 909 A.3d at 416; *Bilt-Rite Contractors, Inc.*, 866 A.2d at 274. Because we are not confident that the School District is precluded from recovery, and PSERS' preliminary objection is not a true demurrer to the sufficiency of the School District's declaratory judgment action, we overrule PSERS' demurrer for failure to state a cognizable claim.

### III. CONCLUSION

Accordingly, we overrule PSERS' preliminary objections and direct PSERS to file an answer to the Petition within 30 days.

**LORI A. DUMAS, Judge**

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg School District,    :
     Petitioner   :
            :  No. 605 M.D. 2024
     v.     :
            :
Public School Employees'  :
Retirement System and Premier :
Arts and Science Charter School, :
     Respondents :

# **O R D E R**

  AND NOW, this 7th day of October, 2025, the preliminary objections filed by the Public School Employees' Retirement System (PSERS) are OVERRULED.  PSERS shall file an Answer within thirty (30) days from the date of this order to the Petition for Review in the Nature of Declaratory Judgment.

            _____
            **LORI A. DUMAS, Judge**